United States District Court
Southern District of Texas
FILED
NOV 2 9 2004
Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **REX TERRY, INDIVIDUALLY and SUNBELT SURPLUS VALUE, INC.,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO. B-03-190** |
| **PARKERCO, INC.,** | § | |
| **Defendant.** | § | |

## PARKER'S MOTION FOR SUMMARY JUDGMENT

Defendant Parkerco, Inc. ("Parker") files this motion for summary judgment under Federal Rule of Civil Procedure 56. Parker respectfully shows the Court as follows:

### I. INTRODUCTION

This is an alleged contract dispute based on the failure of Parker, a customs broker, to file a protest with the U.S. Customs Office ("Customs") on behalf of Plaintiff, an importer of oil field equipment. Plaintiff alleges that during a February 2003 meeting, Parker agreed to file a protest with Customs in order to extinguish import duties assessed on pipe Plaintiff imported from Mexico. *See Exhibit A, Petition.* No protest was ever filed, and Plaintiff owes Customs $72,173.27. *Id.* Plaintiff is suing Parker to recover the full cost of the import duties. *Id.*

This Motion is proper and should be granted because the parties never entered a contract requiring Parker to file a customs protest on behalf of Plaintiff. Further, even if Parker was contractually obligated to file a protest (an obligation for which there is no

proof), the import duties assessed by Customs were proper, and therefore Plaintiff cannot establish ***causation or damages*** as a matter of law. Indeed, the summary judgment evidence demonstrates that filing a protest with Customs would have had no effect. No protest could have changed the pipe from that which requires an import duty to pipe that is duty free — a fact Plaintiff must establish to be entitled to damages. Equally significant, Plaintiff has never paid Customs the money he owes and for which he is now suing Parker. Thus Plaintiff has suffered no actual damages as a matter of law. Summary judgment is therefore proper under Federal Rule of Civil Procedure 56.

## II. SUMMARY JUDGMENT GROUNDS

More specifically, Plaintiff's breach of contract claim fails as a matter of law because Parker's summary judgment evidence demonstrates that:

**(1)** Even if Parker filed a protest on Plaintiff's behalf, Plaintiff could not prove that the pipe he imported is not the pipe he purchased and on which Customs assessed duties;

**(2)** Absent pictures, documents, and witness statements demonstrating that the pipe Plaintiff imported should not be charged antidumping duties, Plaintiff would not have overcome the presumption that Customs properly assesses duties, and his protest would have failed;

**(3)** Customs considered the documentation Terry submitted it in 1997 to be a formal protest and denied the protest; and

**(4)** Plaintiff has never paid Customs the money he owes, and therefore he has no actual damages as a matter of law.

Because Plaintiff's protest would not have succeeded, and he could not recover damages as a matter of law, summary judgment is warranted. *See* FED. R. CIV. P. 56.

## III. SUMMARY JUDGMENT EVIDENCE

The following exhibits are attached in support of this motion and tabbed for the Court's convenience:

| Description | Exhibit |
|---|---|
| Plaintiff's First Amended Petition ("Petition") | A |
| Plaintiff's Answers to Interrogatories ("Interrogatories") | B |
| Plaintiff Rex Terry's Deposition ("Depo") | C |
| Plaintiff's Admissions ("Admissions") | D |
| Superior Auction 1996 Letter to Customs ("Superior Letter") | E |
| Terry's Letters to Customs ("Customs Letters") | F |
| Wire Transfer (illegible) | G |
| Customs Notices | H |
| Sandra Smith's Expert Affidavit ("Expert Affidavit") | I |
| Letter from Surety Company Demonstrating Protest was Denied ("Protest Denied Letter") | J |
| Letter from Customs Demonstrating Protest was Denied ("Customs' Protest Denied Letter") | K |

## IV. PROCEDURAL HISTORY

On September 11, 2003, Rex Terry, Individually and Sunbelt Surplus Value, Inc. ("Plaintiff") filed a Petition in the 93rd Judicial District Court of Hidalgo County, Texas,

styled *Rex Terry, Individually and Sunbelt Surplus Value, Inc. v. Parkerco, Inc. d/b/a Parker & Company Worldwide*, Cause No. C-2387-03-B ("State Action").

Pursuant to this Court's federal question jurisdiction, Parker successfully removed the State Action to this Court on October 30, 2003. *See* 28 U.S.C. §1331. Removal was predicated on the elements of causation and damages in Plaintiff's contract action, as both are controlled by federal (customs) law. Plaintiff filed his First Amended Original Petition with this Court on March 15, 2004. *See Exhibit A, Petition.*

## V. FACTUAL BACKGROUND

Plaintiff is in the business of buying and selling oil field equipment. *See Exhibit B, Interrogatories.* In 1996, Plaintiff intended to import re-usable drill pipe from a Mexican supplier and sell that pipe in the United States. *See Exhibit A.* Plaintiff sought the services of Parker, a customs broker, to facilitate the entry of the pipe. *See Exhibit C, Depo* at 69:5-10; 71:21-24; 72. Plaintiff provided Parker the information necessary to classify the pipe under the Harmonized Tariff Schedule of the United States ("HTSUS"). *See Exhibit C, Depo* at 84:25—86:15-17; 89:18-25. Under the HTSUS, re-usable drill pipe carried a 1.5% import duty, as well as antidumping duties. *See* HTSUS at §7305.12.1030-60. Plaintiff does not claim that Parker somehow erred in classifying the pipe. *See Exhibit C, Depo* at 91:2-11; 118:16-23.

Plaintiff no longer has any documentation that would substantiate the type of pipe he purchased in Mexico in 1996. *See Exhibit C, Depo* at 53:9-15; 62:4-12. He has no pictures, no paperwork, nor any statements from witnesses. *See id.* at 53:9-15; 58:19-21;

62:4-12; 152:22-24. Plaintiff similarly lacks any evidence as to who manufactured the pipe he allegedly bought, or in what country that manufacturing took place. *See id.* at 57:10-18; 58:12-15.

Plaintiff asserts that when the pipe he purchased actually arrived in the United States in April of 1996, it was not the drill pipe he believed he purchased, but rather was structural drill pipe. *See id.* at 118:25—119:8; 120:7-25. Plaintiff does not know how or why the pipe was exchanged, but he does confirm that the mishap did not occur while the pipe was in Customs' control. *See id.* at 121:17-23. He also agrees that Parker was not responsible for the discrepancy. *See id.* at 121:3-16; 151:4-8.

After learning of the problem, Plaintiff took virtually no steps to correct it. *See id.* at 121:24—122:24. He made no effort to return the pipe to his broker in Mexico. *See id.* at 119:9—12; 121:24—122:24; 128:8-12; 153:8-9. He did not pursue the issue with the seller. *See id.* Nor did he advise Customs that the pipe he imported was not the pipe he purchased. *See id.*

Plaintiff similarly failed to document the alleged differences in the pipe. He has no pictures — and no way of demonstrating the size, amount, color, consistency, or value of the pipe he claims he ultimately imported. *See id.* at 99:14-22; 102:13-18; 124:19—125:23. Plaintiff does not know who manufactured the pipe, much less from what country it originated. *See id.* at 57:19-25 ("Q: So, the pipe at issue in this lawsuit, you don't know who manufactured it? A: No. Nobody has any idea."). In truth,

Plaintiff has no empirical evidence that the pipe he received is any different from the pipe he purchased.

Plaintiff insists the imported pipe was eventually sold at an auction in Houston, Texas as "structural drill pipe." *See Exhibit D, Admission*; *Exhibit E, Superior Letter*. Again, Plaintiff lacks any evidence that the pipe sold at the auction was the pipe he imported from Mexico —and on which Customs assessed duties. Also significant, despite claiming that structural drill pipe is inferior to the pipe he intended to import, Plaintiff concedes that structural pipe has various uses, including to build sign posts, cattle guards, fences, and to reinforce tunnels. *See id* at 65:11-25; 66:12-21; 121:1-2. Plaintiff also admits he knows not to what use the structural pipe he sold was ultimately put. *See Exhibit C, Depo* at 128:25-129:5; 131:3-8.

In approximately January of 1996, Plaintiff claims — though again he has no documentation — that Customs notified him that he owed anti-dumping duties on the imported pipe. *See id.* at 137:3—138:18; 139:3-7. Plaintiff ultimately met with Pete Martinez at Customs to resolve the issue. *See id.* at 141:13-16; 162:14-20. In both February and May of 1997, Plaintiff wrote Mr. Martinez a letter explaining why he believed the anti-dumping duties should be extinguished. *See id.* at 143:20—144:9; 158:20-24; *see also Exhibit F, Martinez Letters*. Aside from the correspondence from the auction house and a copy of a wire transfer, Plaintiff provided no paperwork with the letters to justify to Customs why it should remove the duties. *See id.* at 145:1-6; *see Exhibit E, Superior Letter; Exhibit G, Wire Transfer*. After sending the letters, Plaintiff

never confirmed that Customs changed the classification from drill pipe to structural pipe; nor did he confirm that the anti-dumping duties were ever removed. *See Exhibit C, Depo* at 153:10-12; 161:9—162:1. In fact, Plaintiff admits that in 1996 Customs may have assessed anti-dumping duties on structural pipe as well. *See id.* at 136:18-23; *see also id.* at 218:6-11 ("Q: Even though the pipe that you actually imported was different than what you expected . . . it still may have carried a duty with it, right? A: Yes, ma'am, it may have.").

Plaintiff claims he heard nothing from Customs until six years later, when he received a notice of liquidation and a bill totally approximately $72,000. *See Exhibit H, Customs Notices*. Plaintiff maintains that in February of 2003, he approached Parker to assist him in filing a protest to remove the import duties. *Exhibit B, Interrogatories*. No written contract between the parties was ever signed, much less drafted, and it is Parker's position that no such contract was ever entered. *See Exhibit C, Depo* at 193:21-22. Parker did not believe it was obligated to file a protest, and thus it took no action on Plaintiff's behalf. Because protests must be filed within 90 days of liquidation, Plaintiff's debt to Customs became final on or about May 15, 2003. 19 U.S.C. 1514(b)(2).

On September 11, 2003, Plaintiff filed suit in the 93rd Judicial District Court of Hidalgo County, Texas for breach of contract ("the State Action"). This lawsuit is not about Parker importing the wrong goods or improperly classifying the pipe Plaintiff purchased. *See Exhibit B, Interrogatories*; *Exhibit D, Admissions*. Plaintiff's lawsuit is based solely on oral representations Parker allegedly made more than six years after

Customs assessed duties on Plaintiff's pipe. *See Exhibit A, Petition; Exhibit B, Interrogatories.*

## VI. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden on the movant is satisfied by pointing out to the district court that there is an absence of evidence to support any essential element of the nonmovant's claim. *Id.* at 324.

Rule 56 also provides for summary judgment when the moving party demonstrates the absence of a genuine issue of material fact on an essential element of the nonmovant's case. FED. R. CIV. P. 56(c); *Celotex*, 477 U.S. at 323; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Once the moving party has satisfied its burden, the nonmoving party must go beyond the pleadings and show by depositions, answers to interrogatories and admissions on file, affidavits, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. FED. R. CIV. P. 56(e). The nonmoving party cannot satisfy its burden by metaphysical doubt as to the facts, conclusory allegations, unsubstantiated assertions, or a scintilla of evidence. *Little*, 37 F.3d at 1075. Summary judgment is proper here because Parker's summary judgment evidence demonstrates that Plaintiff suffered no damages, an essential element of Parker's breach of contract claim. *See* FED. R. CIV. P. 56(e).

Summary Judgment is appropriate here under both standards.

## VII. DISCUSSION

Plaintiff is suing Parker based on the following theory: If Parker had filed a protest and resolved these import duties with Customs, then Plaintiff would be absolved of his responsibility to pay the $72,173.27 duties Customs assessed. *See Exhibit A, Petition*. To prevail under this contract theory,[1] Plaintiff must prove that: (1) a valid contract existed between them; (2) Plaintiff tendered performance of his contractual duties; (3) Parker breached the contract; and (4) Plaintiff suffered damages as a result of Parker's breach. *Sport Supply Group, Inc. v. Columbia Casualty Co.*, 225 F.3d 453, 465-66 (5th Cir. 2003); *Taub v. Houston Pipeline Co.*, 75 S.W.3d 606, 615 (Tex. App. – Texarkana 2002, pet. denied); *Boon Ins. Agency, Inc. v. American Airlines, Inc.*, 17 S.W.3d 52, 58 (Tex. App.—Austin 2000, pet. denied). It is the last element, proving that Plaintiff suffered damages as a result of Parker's breach, which makes Plaintiff's contract claim unviable as a matter of law.[2] *Sport Supply Group, Inc*, 225 F.3d at 465-66; *Taub*, 75 S.W.3d at 616; *Lopez v. Continental Ins. Corp.*, 1997 WL 148032 at * 6 (N.D. Tex. 1997).

[1] Plaintiff also asserts a claim for negligent misrepresentation. *See Exhibit A, Petition*. Plaintiff admits that any representations Parker made regarding classifying the pipe occurred in 1996, and thus would be barred by the statute of limitations. *See Exhibit C, Depo* at 182:20-23; 184:17-24; 220:6-9; *see also* TEX. CIV. PRAC. & REM. CODE § 16.003(a). In addition, Parker's argument that Plaintiff had no damages applies equally to Plaintiff's negligent misrepresentation claim, and thus summary judgment is proper on that claim as well. *See* FED. R. CIV. P. 56.

[2] Parker will assume, for summary judgment purposes ***only***, that it agreed to file a protest on Plaintiff's behalf.

In *Lopez*, the plaintiff sued Continental Airlines for breaching an agreement under which Continental was required to notify and consider the plaintiff for open investigator positions in their security department. Continental moved for summary judgment arguing that Lopez suffered no damages as a result of its alleged failure to do so. The Court held that Lopez could recover ***only*** if he could demonstrate that he would have been hired had he been considered for all available job openings. *Lopez*, 1997 WL 148032 at * 7. The summary judgment evidence demonstrated that even if Continental did breach its contract with Lopez, Lopez could not prove that he would have been hired had Continental honored the agreement. As a result, Lopez could not demonstrate that he suffered damages and summary judgment was proper. *Id.*; *see also Sport Supply Group, Inc.*, 225 F.3d at 465-66 (reasoning that "even assuming that RSKCo had a contractual duty to timely report all claims to Columbia, and assuming that RSKCo failed to perform that duty in this case, Sport Supply was not damaged by RSKCo's alleged breach. Thus, Sport Supply cannot demonstrate all of the elements of a breach of contract claim. The district court properly granted RSKCo's motion for summary judgment as to this claim.").

Here, Plaintiff similarly must establish that had Parker filed a protest, the protest would have been successful and resulted in Plaintiff's import duties being extinguished. Parker's summary judgment evidence established that this result would not have occurred as a matter of law. *See* FED. R. CIV. P. 56.

**A. Plaintiff's Protest Would Have Failed**

To prevail on a protest, a plaintiff shoulders the dual burden of proving that: (1) the classification by Customs was erroneous; and (2) that the plaintiff's claimed classification is correct. *See, e.g., Schott Optical Glass, Inc. v. United States*, 468 F.Supp. 1318, 1320 (Cust. Ct. 1979); *Merry Mary Fabrics, Inc. v. United States*, 1 Ct.Int'l Trade 13, 19-20 (1980). In demonstrating that Customs erred, a plaintiff also must overcome the presumption that Customs accurately assesses duties. 28 U.S.C. § 2639(a)(1); *see also Schott Optical Glass*, 468 F.Supp. at 1320 ("Authoritative case law leaves no doubt that to overcome this presumption, the plaintiff must prove that the customs classification was wrong, and that its claimed classification is correct").

A prerequisite to satisfying this burden of proof is the obligation that the plaintiff file a valid protest that satisfies the statutory and regulatory requirements set forth in 19 U.S.C. § 1514(c) and 19 C.F.R. § 174.13(a). In addition to other formal requirements, § 1514(c)(1) states that "[a] protest must set forth distinctly and specifically . . . each decision . . . as to which protest is made; . . . the nature of each objection and the reasons therefor; and . . . any other matter required by the Secretary by regulation." 19 U.S.C. § 1514(c)(1). Regulation § 174.13 states that "[a] protest shall contain the following information ... [t]he nature of, and justification for the objection set forth distinctly and specifically with respect to each category, payment, claim, decision, or refusal." 19 C.F.R. § 174.13(a)(6). Courts have repeatedly warned that protests are not "akin to notice pleadings [that] merely have to set forth factual allegations without providing any

underlying reasoning." *Koike Aronson, Inc. v. U.S.*, 165 F.3d 906, 909 (Fed. Cir. 1999) (citing *Computime, Inc. v. United States*, 772 F.2d 874, 878 (Fed. Cir. 1985)).

As an Import Specialist with the US Customs Service for approximately 16 years, Sandra Smith has experience reviewing protests. *See Exhibit I, Expert Affidavit.* Based on her experience and training, and the evidence in this case, Ms. Smith has determined that Mr. Terry's protest would not have been successful due to his complete lack of evidence:

> My opinion is that a protest would not have been successful because Mr. Terry lacks sufficient evidence to overcome the presumption that Customs properly assessed duties. Customs requires definitive evidence to support a protestant's claim, including documents, pictures if appropriate, statements from witnesses, etc. In this case, Customs would have required evidence that the goods received were not the goods purchased. Customs also would have preferred a statement from a disinterested third party as to the value of the goods received. Roughly seventy-five percent of protests are denied for lack of evidence.

*Exhibit I, Expert Affidavit.*

The uncontroverted summary judgment evidence is that Plaintiff has no proof that what he imported — and on which Customs assessed anti-dumping duties — is any different than what he purchased. Plaintiff has no pictures, no paperwork, no witness statements. *See Exhibit C, Depo* at 99:14-22; 102:13-18; 124:19—125:23. Aside from his own testimony, Plaintiff's *only* proof of what he imported is a letter from Superior Auction suggesting he sold some structural pipe in 1996. *See id.* at 212:22-213:1.

Plaintiff has no proof that the pipe sold by Superior Auction is the pipe he

mistakenly imported from Mexico. But even if Plaintiff were able to convince Customs that he imported structural pipe, he has no evidence as to the exact amount of pipe, its composition, its country of origin, or its value.[3] *See id.* at 128-29. Plaintiff's inability to demonstrate what exactly he imported likewise prevents him from establishing that the classification he asserts is accurate, a requirement of a successful protest. *See e.g., Hawaiian*, 473 F.Supp. 787 (1979), *aff'd*, 617 F.2d 286 (1980); *Merry Mary Fabrics*, 1 Ct.Int'l Trade 13 (1980). Indeed, Plaintiff knows not whether structural pipe even carried a different duty than drill pipe in 1996:

> Q. But if, for example, structural pipe, the kind of pipe you imported, carried with it a duty . . . you would be responsible for that duty, right?
>
> A. If I had bought structural pipe and I had brought it across and I was assessed what I paid for it, yes, I'd be prepared. . .
>
> Q. Well, do you have any proof or anything that would suggest to you that the structural pipe you brought into this country shouldn't have a duty placed on it?
>
> A. No, ma'am. I don't -- I don't know where it would fall. . . .

*See Exhibit C, Depo* at 218:25—219:12.

It defies logic to suggest that Customs would acknowledge Plaintiff's mere statement as proof that its duties should be removed. Even if Customs were to accept the veracity of Plaintiff's testimony, the law simply requires more, yet it is undisputed that Plaintiff has nothing more on which to rely. *See id.* at 212:22-213:1; *Exhibit I, Expert*

---

[3] Plaintiff claims he did not sell all of the pipe at issue at the Superior Auction. *See Exhibit C, Depo* at 128:15-24.

*Affidavit.* Without concrete proof to corroborate his assertions, Plaintiff's evidence is insufficient to overcome the presumption that Customs properly assessed duties. *See, e.g., Samsung Electronics America, Inc. v. United States,* 35 F.Supp.2d 942, 945-46 (1999) ("Although the Court has no reason to doubt the veracity of Samsung's assertions, without additional, independent evidence to corroborate the assertions, the Court cannot verify that the merchandise was actually defective . . . ."); *Prosegur, Inc. v. U.S.*, 140 F.Supp.2d 1370, 1378-79 (CIT. 2001) ("Customs chose not to classify the goods as American Goods Returned, but rather to classify them as dutiable, because of the inadequacy of Prosegur's documentation."). Even Plaintiff admits he has no proof that a protest would have been successful:

> Q: But you would agree with me that even if Parker had filed the protest, in order to be successful and in order for the duties to be extinguished, you would have had to prove that they weren't proper in the first place, correct?
>
> A. That's – that's the -- the gist of it. . . .
>
> * * *
>
> Q. Do you have any proof you would have been successful, had a protest been filed?
>
> A. No, nobody could have been 100 percent. No, ma'am.

*See Exhibit C, Depo* at 213:6-8; 219:23—220:2.

Because, as Expert Smith explained, Plaintiff's protest necessarily would have failed, Plaintiff suffered no damages as a result of Parker's alleged breach. *See Exhibit I, Expert Affidavit.* Without competent proof of damages, an essential element in a contract

claim, summary judgment is proper. *Celotex Corp. v. Catrett*, 477 U.S. at 322; *Taub*, 75 S.W.3d at 616-20.

**B. Customs Denied Plaintiff's Protest**

Not only does Parker's expert testimony establish that Mr. Terry's protest would have failed, Customs itself agrees. "Exhibit 8 to Mr. Terry's deposition is a 'Formal Demand on Surety For Payment of Delinquent Amounts Due.' This covers 25 entries covering the period from April 1, 1996 to April 23, 1996, with an amount due of $75,290.70. These are the entries at issue. On this document, Customs lists 'Protest Number: 230403100159 . . . Protest Status: Denied . . . Approval/ Denial Date: 08/08/03.' This document indicates that a protest was filed, and denied by Customs." *Exhibit I, Expert Affidavit*; *see also Exhibit J, Protest Denied Letter*; *Exhibit K, Customs' Protest Denied Letter* at page 2. According to Expert Smith:

> [I]n all likelihood Customs considered the documentation Terry submitted in 1997 to be a formal protest. Customs then denied the protest.

*Exhibit I, Expert Affidavit.*[4]

It is clear from Plaintiff's deposition testimony that the only evidence he had in 2003 to support his protest is the same evidence he provided to Customs in 1997:

> Q. What documents would you have relied on to prove that Customs improperly classified the pipe and placed an antidumping duty on it?

[4] Parker filed a request with Customs to obtain this protest information. Parker will supplement this motion with the relevant documents as soon as they are received.

> A. Everything I have showed you today that I also produced to Customs back in '97. . . .

*See Exhibit C, Depo* at 212:22-213:8. Customs apparently reviewed that evidence, which included *only* the Superior Auction Letter and Plaintiff's own testimony, and, consistent with Ms. Smith's opinion, deemed it insufficient to justify reclassifying the pipe and eliminating the duties Plaintiff owes. Consequently, Plaintiff is in no different position today than he would have been had Parker filed his protest. He therefore has suffered no injury and summary judgment is proper. *See* FED. R. CIV. P. 56.

### C. Plaintiff Has Suffered No Damages

Finally, but no less importantly, summary judgment is proper because Plaintiff has suffered no actual damages in this case. The universal rule for measuring breach of contract damages is just compensation for the loss or damage *actually* sustained. *Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex. 1991). The proper measure of recovery has also been stated as the amount that the injured party would have to expend to make him or herself whole. *See, e.g., CDB Software, Inc. v. Kroll*, 992 S.W.2d 31, 37 (Tex. App.—Houston [1st Dist.] 1998, pet. denied); *Mozer v. Goolsbee*, 293 S.W.2d 91, 98 (Tex. Civ. App.—Waco 1956, writ ref'd n.r.e.). By operation of these rules, a party generally should be awarded no less and no more than his or her actual damages. *Id.; see also Stewart v. Basey*, 245 S.W.2d 484, 486 (Tex. 1952) (measure of damages for breach of contract is just compensation for damages actually sustained by plaintiff as a result of defendant's default).

Here, Plaintiff's unequivocal testimony is that he has suffered no actual damages in this case. Plaintiff is no worse off today than he was in 2003. Indeed, Plaintiff has never paid Customs the money he owes:

> Q. So, you haven't actually paid out any money to Customs, have you --
>
> A. No.
>
> Q. -- about the pipe at issue?
>
> A. No, ma'am.
>
> Q. So, at this point in time, you're not out-of-pocket any money yet, are you?
>
> A. No. I've just got a stack of invoices that come once a month, hit me up for 70-something-thousand-dollars.
>
> Q. From this insurance company?
>
> A. No, from the Government.
>
> Q. Okay. But, at this point, you haven't paid anything?
>
> A. No, ma'am.

*See Exhibit C, Depo* at 112:25-113:13.

> Q. And you would agree with me that if you paid the amount now, the -- there wouldn't be interest continuing to accrue, correct?
>
> A. Yeah, I think that's right. Yes, ma'am.
>
> Q. So, every month, you're charged more and more money because you haven't paid the duties on the pipe at issue in this case?
>
> A. Yes, ma'am, that's what I understand.
>
> Q. And based on the fact that you keep getting these invoices, does that tell you that the bond company has not paid these duties either?
>
> A. Yes, ma'am.

*See Exhibit C, Depo* at 114:8-19.

This conclusive proof that Plaintiff has suffered no actual damages results in the presumption that any award in this case would be a windfall. Plaintiff's claim for damages is premature at best and must fail as a matter of law. *See* FED. R. CIV. P. 56.

## II. PRAYER

Defendant Parkerco, Inc. ("Parker") prays that this Court grant its motion for summary judgment, enter a take-nothing judgment for the Plaintiff, and grant Defendant all other relief to which it is justly entitled.

Respectfully submitted,

FULBRIGHT & JAWORSKI

By ______________________
Julie A. Hardin
Federal I.D. No. 26459
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Telephone: 713/651-5151
Telecopier: 713/651-5246

Attorney-in-Charge for Defendant, Parkerco, Inc. d/b/a Parker & Company Worldwide

OF COUNSEL:

FULBRIGHT & JAWORSKI L.L.P.

Michael C. Steindorf
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-2784
Telephone: 214/855-8000
Telecopier: 214/855-8200

**CERTIFICATE OF SERVICE**

This pleading was served in compliance with Rule 5 of the Federal Rules of Civil Procedure on November 26, 2004.

Julie A. Hardin