## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

REX TERRY, INDIVIDUALLY           §
and SUNBELT SURPLUS VALUE, INC.   §
                                  §
        Plaintiffs,               §
                                  §
vs.                               §          CIVIL ACTION NO. B-03-190
                                  §
PARKERCO, INC., d/b/a PARKER      §
& COMPANY WORLDWIDE,              §
                                  §
        Defendant.                §

### PLAINTIFFS' ANSWERS TO FIRST SET OF INTERROGATORIES

TO:    Defendant ParkerCo, Inc., d/b/a Parker & Company Worldwide, by and through
its attorney of record, Julie Hardin, Fulbright & Jaworski L.L.P., 1301 McKinney, Suite
5100, Houston, Texas 77010-3095.

        COMES NOW, Plaintiffs Rex Terry, individually, and Sunbelt Surplus Value,
Inc., and pursuant to Rule 33 of the Federal Rules of Civil Procedure, make this their
Answers to First Set of Interrogatories.

                        Respectfully submitted,

                        GRISSOM & THOMPSON

                        Donald H. Grissom
                        State Bar No. 08511550
                        William W. Thompson, III
                        State Bar No. 19960050
                        609 West 10th Street
                        Austin, Texas  78701
                        (512) 478-4059
                        (512) 482-8410 fax

**EXHIBIT**
3ᵈ

RECEIVED
MAR 2 6 2004
JULIE HARDIN

B

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been either hand-delivered, sent by U.S. Mail, Certified Mail, Return Receipt Requested, and/or Facsimile Transmission to the following service list on this 2 4 day of _____, 2004.

*Donald H. Grissom*

Donald H. Grissom

Julie A. Hardin
Fulbright & Jaworski L.L.P.
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
(713) 651-5151
(713) 651-5246 fax

## INTERROGATORIES

**INTERROGATORY NO. 1:** Please describe your business (and Sunbelt Surplus Value, Inc. if it is different), including but no limited to:

a.    what kind of business it is;
b.    what position you hold in the company;
c.    what types of goods you import; and
d.    how often and when you began to import goods from Mexico (i.e., weekly, monthly).

**ANSWER:**   a.    buy and sell oil field equipment.
              b.    Owner.
              c.    oilfield related equipment.
              d.    the last occasion was in 1996.


**INTERROGATORY NO. 2:** Please describe your business relationship with Parker going back ten (10) years, including but not limited to:

a.    the dates (month/year) of all transactions between you and Parker;
b.    the types of all transactions (i.e., what commodities or goods were involved);
c.    the dates (month/year) of all consulting services provided to you by Parker; and
d.    what those specific services were.

**ANSWER:**   See documents produced.


**INTERROGATORY NO. 3:** Please describe your sources of information regarding the importation of good into the United States (including the classification of goods and imposition of import fees or duties). Include in your answer any seminars, lectures, or informational meetings you attended, any trade organization, trade associations, memberships, or groups you belong to, and any past employment with the U.S. Customs Service by you or your employees, etc.

**ANSWER:**   I relied on the expertise of the import agent.


**INTERROGATORY NO. 4:** Have you ever sought a ruling, files a protest, or filed an administrative review from the U.S. Customs Service regarding the classification of goods you were importing, and if so, describe the goods at issue, the date of the ruling, protest, or review, and the result?

**ANSWER:**    In January 1997, a protest was filed on some of the shipments of pipe due to a misclassification by Parkerco. Those documents will be produced.

**INTERROGATORY NO. 5**:  Please describe your experience with U.S. Customs Service procedures over the past ten (10) years, including but not limited to:

a.    all dumping fees and/or duties assessed on your company;

b.    all reclassifications of goods after importation by your company; and

c.    any and all "Notices of Action" or "Requests for Information" for either a. or b. above.

**ANSWER**:    See documents being produced in this matter.

**INTERROGATORY NO. 6**:  Please describe the steps you took to import the pipe at issue, including how you came to know about the pipe, from whom you bought the pipe, from where it came in Mexico, whether you inspected the pipe before it was purchased, whether you received or reviewed any specifications, etc.

**ANSWER**:    The pipe was purchased from PEMEX through a broker by the name of Frank Avila.  I inspected the pipe at the PEMEX yard and it was marked "white band".  The only specifications other than "white band" were the dimensions.  The pipe actually delivered was "red band" pipe.

**INTERROGATORY NO. 7**:  Please describe the pipe at issue in this lawsuit, including:

a.    what you believe its classification should be under the Harmonized Tariff Schedule;

b.    the width of the pipe;

c.    the thickness of the pipe;

d.    the material makeup or composition (i.e., steel, iron);

e.    the use or purpose of the pipe before you purchased it; and

f.    whether the pipe was in any way damaged, defective, or unusable.

**ANSWER**:    a.    19 CFR 158.21 (A).

b.    3½" + 5".

c.    exact thickness not presently known.

d.    drill pipe.

e.    used for drilling oil wells.

f.    the pipe inspected at the PEMEX yard was used but in very good condition.

**INTERROGATORY NO. 8**:  Please state the facts that support your contention, if any, that the pipe you purchased or intended to purchase was materially different in quality, nature, use, or respect from the pipe that was ultimately imported.  If you have such a

contention, describe the way in which the pipe was different and your understanding of why that difference occurred.

**ANSWER:**    The pipe inspected was "white band" pipe but the pipe delivered was "red band" pipe, which is defective and can only be used for structural purposes.

**INTERROGATORY NO. 9:** Please describe the substance of all conversations you have had with any Parker employee, including the specific employee's name, the date and place of the conversation, and the nature of each conversation.

**ANSWER:**    I originally spoke with and worked through Pilo Walters. There were numerous conversations given the amount of business I was doing with them and cannot recall the exact time or the specific conversations. I did speak with him about this particular transaction a few days before my trip to Mexico and the day of my trip. He advised that this pipe be classified as Mexican pipe since there was no duty on pipe, whether Mexican or U.S. He also told me to take the paperwork directly to U.S. Customs rather than Parkerco.

In February of 2003 I met with Pritchard and Torres about the assessment from U.S. Customs. They said they would file the protest and take care of the problem since there was no duty or fee on this pipe. Torres said that he used to work with one of the customs agents and this was a "done deal".

**INTERROGATORY NO. 10:** Please describe the substance of all conversations you have had with Mr. Larry Hansen, including the date, place, and nature of each conversation.

**ANSWER:**    I met with Mr. Hansen at his office in Houston shortly after my meeting with Pritchard and Torres. He said he was their attorney and would review the transactions. He also said that Parkerco had "dropped the ball" on this and clearly indicated that they were liable for remedying the problem.

On the last day that a protest could be filed, he said that he could not handle the matter since Parkerco had refused to pay for that.

**INTERROGATORY NO. 11:** Please state the facts that support your contention that you entered any contracts with Parker, including:

a.    the date the contract was entered;
b.    with whom any conversations took place;
c.    whether the terms of the contract were put in writing;
d.    the price for Parker's services and whether that price was paid; and
e.    both parties' obligations under the contract.

**ANSWER:**  a.  February 2, 2003.
                b.  Pritchard and Torres.
                c.  No.
                d.  This was included in the amounts paid to them for the original services in 1996 and this was their responsibility.
                e.  I was to provide the original paperwork and they were to file a protest and resolve the assessment of dumping fees.

**INTERROGATORY NO. 12:** Please state the facts that support your contention that the U.S. Customs Service erred in assessing dumping fees on the pipe at issue in this lawsuit.

**ANSWER:** The pipe actually imported was defective pipe and could also have been classified as U.S. pipe.

**INTERROGATORY NO. 13:** Aside from the dumping fees, were any other customs fees/duties placed on the imported pipe at issue in this lawsuit, and if so:

a.    when were they imposed;
b.    for what reason were they imposed;
c.    for how much money; and
d.    did you pay them.

**ANSWER:** No.

**INTERROGATORY NO. 14:** Describe the auction that Superior held in Houston, Texas in the summer of 1996 involving the sale of the pipe at issue in this lawsuit, including:

a.    what kind of pipe you sold;
b.    how much money your pipe was sold for;
c.    any conversations you had with the auctioneers regarding the quality, quantity, and price of your pipe;
d.    any conversations you had with the buyers of your pipe subsequent to the auction regarding the quality, quantity, and price of your pipe;
e.    the use or purpose of your pipe by the buyer; and
f.    whether the pipe was recycled or somehow unusable.

**ANSWER:** I do not know that all the pipe sold at that auction was the pipe at issue here but with regard to that auction:
                a.  3 ½" x 5" pipe.
                b.  $34,362.77.

c.    None.
d.    None.
e.    Structural.
f.    It was useable for structural purposes.

**INTERROGATORY NO. 15:**  What steps, if any, do you believe Parker failed to take that would have changed the assessment of any dumping fees at issue I this lawsuit?

**ANSWER:**    Parkerco failed to advise that there would be dumping fees for importing Mexican drill pipe.

**INTERROGATORY NO. 16:**  What acts or omissions by Parker, if any, do you contend caused an import error (meaning the wrong good was imported)?

**ANSWER:**    None to my knowledge.

**INTERROGATORY NO. 17:**  What acts or omissions by Parker, if any, do you contend caused the imposition of any unwarranted customs duties or fees?

**ANSWER:**    They misrepresented to me that there were no duties on pipe.  They also failed to file a protest in 2003 as they had agreed to do.

**INTERROGATORY NO. 18:**  Did Hou-Tex metals use as scrap any of the pipe at issue in this lawsuit?  If so, how did Hou-Tex use the pipe (*i.e.*, was it recycled, melted, sold, etc.), and when did that occur?

**ANSWER:**    I do not know what Hou-Tex did with this pipe.

**INTERROGATORY NO. 19:**  Describe your past and current relationship with XL Surety, including whether XL Surety paid U.S. Customs for the duping fees at issue in this lawsuit, whether XL Surety communicated with you regarding the pipe at issue, and if so, state when, whether it oral or written, and the substance if each communication.

**ANSWER:**    They held the bond.  See documents produced.

## VERIFICATION

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF TRAVIS | § |

BEFORE ME, the undersigned authority, on this day personally appeared Rex Wayne Terry, known to me to be the person whose name is subscribed to the foregoing instrument, who, after being duly sworn and deposed, says that the above and foregoing answers to interrogatories are true and correct.

_____
(signature)

SUBSCRIBED AND SWORN TO BEFORE ME on this **25** day of
_**March**_____, 2004, to certify which witness my hand and seal of office.

_____
Notary Public, State of Texas

